**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| The **UNITED STATES of AMERICA** and<br>**The STATE OF ILLINOIS**, *ex rel.*<br>**DONALD HELFER, M.D.** and<br>**DONALD HELFER, M.D.**, Individually,<br><br>Plaintiffs,<br><br>vs.<br><br>**ASSOCIATED ANESTHESIOLOGISTS OF<br>SPRINGFIELD, LTD.**, an Illinois Corporation,<br>**CBIZ MEDICAL MANAGEMENT PROFESSIONALS,<br>INC.**, an Ohio Corporation, and **ANESTHESIA<br>BUSINESS CONSULTANTS, LLC**, a<br>Michigan Limited Liability Corporation, **MEMORIAL<br>MEDICAL CENTER**, an Illinois Not-For-Profit<br>Corporation and **MEMORIAL HEALTH SYSTEM**,<br>an Illinois Not-For-Profit Corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>) No. 10-cv-03076-SEM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RESPONSE TO DEFENDANTS' CONSOLIDATED
MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT**

As the Defendants have offered a concise, well-drafted summary of the majority of the

allegations of Relator's Complaint in the Introduction to their Memorandum in Support of

Defendants' Consolidated Motion to Dismiss Relator's Amended Complaint ("DEF Memo"),

Relator will not go through the details of the filing of his action or the contents of the counts of

his Amended Complaint.[1]   Relator would like to point out, however, contrary to Defendants'

summary, the CRNA Counts involve more than five CRNAs employed in 2005 as intimated by

Defendants.  Instead, the CRNA Counts allege that since 1997:

---

[1] Relator will refer to the counts of his Amended Complaint (i.e. the Billing Counts, CRNA
Counts, etc) as Defendants have referred to them in the DEF Memo for the Court's convenience.

- Defendant Memorial Medical Center ("Defendant MMC") has employed CRNAs utilized by Defendant Associated Anesthesiologists of Springfield, Ltd. ("Defendant AAS") in performing anesthesia services at Memorial Medical Center (Amended Complaint ¶153, 182, 214, etc.).  Prior to 2004, the agreement excluded cardiac CNRAs  (Amended Complaint ¶153, 157-161, 182, 186-190, 214, 218-222, etc.);

- Defendant AAS has billed Medicare and IL Medicaid for the services of the CRNAs employed by Defendant MMC and received Medicare and IL Medicaid reimbursement for the same (Amended Complaint ¶154, 170-171, 183, 200-202, 215, 233-235, etc.); and

-  Defendant MMC has claimed costs of employment for the CRNAs on its cost reports filed with both Medicare and IL Medicaid (¶265, 267 297, 329, etc).

The five CRNAs specifically discussed in the Amended Complaint are not the only CRNAs Relator alleges were employed by Defendant MMC for use by Defendant AAS, with Defendant AAS billing Medicare and IL Medicaid for their services while Defendant MMC claims costs of the CRNA employment on their Medicare and IL Medicaid cost reports.

**ARGUMENT**

**I.**     **Relator has set forth a cause of action for violation of the False Claims Act in Counts I-III.**

Rule 12(b)(6) allows dismissal of a complaint for failure to state a cause of action upon which relief can be granted.  *Equal Employment Opportunity Commission v. Concentra Health Services, Incorporated*, 496 F.3d 773, 776 (7th Cir. 2007).  While Fed.R.Civ.P. 8 requires that that cause of action be made in a "short and plain statement" of the claim showing that the pleader is entitled to relief, that "short plain statement" must provide the opposing party with

both fair notice of and the basis for the claim.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).  When reviewing a complaint for purposes of Rule 12(b)(b), two inquiries must be made:

> First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests.  Second, its allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court.

*EEOC v. Concentra*, 776.

There can be no question that Realtor has met the first inquiry for surviving a Rule 12(b)(6) motion.  To state a cause of action under the False Claims Act, a Relator must allege (1) a false claim or statement (2) submitted to the government for payment or approval (3) by a defendant who knew the claim was false.  *United States ex rel. Fowler v. Caremark Rx, L.L.C,* 496 F.3d 730, 740-741 (7th Cir. 2007); *United States ex rel. Yannacopolous v. General Dynamics, et al.*, 652 F.3d 818, 822 (7th Cir. 2011).  Counts I-III of Relator's Amended Complaint set forth causes of action arising from false claims and statements submitted or caused to be submitted by Defendants Associated Anesthesiologists of Springfield, Ltd ("Defendant AAS"), CBIZ Medical Management Professionals, Inc. ("Defendant MMP") and Defendant Anesthesia Business Consultants, LLC ("Defendant ABC") to Medicare for "medically directed" anesthesia services knowing that those claims were false as the services qualified only as "medically supervised" services and should have been billed and paid at a lower rate. Defendants assert that these counts fail under Rule 12(b)(6) for failure to state a cause of action because Relator has pled that Defendant AAS billed for services which took them out of their "medical direction" area but not that Defendant AAS actually performed those services, which would have resulted in "medical supervision" of the services rather than "medical direction."

The second inquiry under Rule 12(b)(6) appears to be where Defendants believe that Relator has pled himself right out of court by asserting in other counts of his complaint that Defendants were not actually present in the Obstetrics Department providing continuous epidural services as they claimed and never alleging that Defendants billed for "medically directed" anesthesia services while at the same time actually *performing* continuous epidural anesthesia services.  DEF Memo, p. 9.  There is no doubt that a litigant can plead himself out of court.  As stated by the Seventh Circuit Court of Appeals in the matter of *Tamayo v. Blagojevich, et al.*, 526 F.3d 1074 (7th Cir. 2008):

> Our case law recognizes that a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims.  A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.  If the plaintiff voluntarily proves unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief.

*Tamayo*, 1086 (internal citations omitted).

In order to prevent "pleading himself out of court", Relator must "plausibly suggest" that there is a right to relief and raise that possibility above the "speculative level".  *EEOC v. Concentra*, 776.  Plaintiff has done just that, alleging that if Defendant AAS anesthesiologists left their "medical direction" service area to provide continuous epidural anesthesia services in the Obstetrics Department, as they indicated to IL Medicaid, without lowering their supervision level to "medical supervision", they knowingly submitted false claims to the Government.  It is plausible that false claims resulted from such a scenario.

It is important to recognize that "[a]lthough our pleading rules do not tolerate factual inconsistences in a complaint, they do permit inconsistencies in legal theories."  For example, in *Tamayo*, a Title VII sexual discrimination matter, the plaintiff first alleged she was discriminated against because she was a female and later in her complaint alleged that the discrimination was

motivated by a political power struggle.  Defendants asserted that such contradictory reasoning by the plaintiff resulted in her pleading herself right out of court on a claim of sexual discrimination.  The Seventh Circuit disagreed, stating:

> To succeed in a Title VII discrimination act, an employee need not show that her sex was the *exclusive* reason for her employer's actions.  She must prove only that sex was a *motivating* factor.  Although the defendants ultimately may be able to prove that they would have engaged in the same conduct based on their political disagreements with Ms. Tamayo, it is not implausible that Ms. Tamayo's sex also was a motivating factor in their behavior.  The complaint certainly shows that the defendants were upset with Ms. Tamayo's failure to cooperate with their policies; however, it leaves open the possibility that, had she been a non-cooperative male, they would not have reacted by blocking her salary increase or ostracizing her in the office.  Such a contention may be difficult for Ms. Tamayo to prove; however, that is a question to be confronted later in the litigation when plaintiff is put to her proof.

*Tamayo*, 1086-1087.

Defendants must also realize that a complaint does not have to include a plaintiff's evidence.  *Tamayo*, 1081.  "Indeed, litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of Rule 8."  *Id.*, citing *Bennett v. Schmidt*, 153 F.3d 518, 519 (7th Cir. 1998)(emphasis in original).  Relator himself believes that his Amended Complaint Counts I-III are "windy" enough by setting forth the particular facts necessary to state his cause of action without him being required to also plead his proof.

Relator's Amended Complaint alleges that rather than providing continuous epidural anesthesia services as they claim, the anesthesiologist started the procedure and either returned to his assigned procedure areas or left the hospital premises.  It is important to note that Relator's complaint does not allege that after he started an epidural anesthesia service the anesthesiologist went **straight back** to his assigned procedure only that he **returned** to them.  Accordingly, questions still remain as to where the anesthesiologist actually was when allegedly performing

"medically directed" services. Concurrency for purposes of "medical direction" is also broken if he only went to the Obstetrics Department long enough to start an epidural service but then did not immediately return to the surgery area.  So, how long was the anesthesiologist gone from the surgical floor?  Did he go straight up to Obstetrics, start the epidural and return to his assigned procedure rooms?  Did he stop by the cafeteria and have lunch on the way back?  Did he stop by Defendant AAS office at Memorial Medical Center and complete some paperwork?   Did he leave the hospital after beginning labor epidural services?  Paragraph 376 of Count XI provides seven specific dates Relator was instructed by his Charge Anesthesiologist to leave the hospital for the day even though he had started labor epidural services on a patient (specifically named in ¶376) that was continuing at the time he left the hospital. This type of detail is uniquely in the possession of defendants, not accessible to the Relator, is not required to be pled to state a cause of action and will be developed in discovery.

Plaintiff cannot be said to have "pleaded himself out of court" at this stage of the litigation.  His complaint has stated a cause of action beyond the speculative level that Defendant AAS submitted claims to Medicare for "medical direction" of services when its anesthesiologists were not in the surgical area providing those services – whether the anesthesiologists were upstairs in Obstetrics, somewhere else in the facility or had left the premises.   The issue of whether Defendants were providing medical direction or medical supervision and how it has been billed to Medicare and Medicaid  has been set forth  in a manner that plausibly suggests the submission of false claims.  Counts I-III should not be dismissed pursuant to Rule 12(b)(6).

II.     **Relator has provided all notice required by the Illinois False Claims Act to the State
        of Illinois and has standing to proceed with his action.**

Defendants assert that Relator lacks standing to pursue his claims under the Illinois False
Claims Act, 740 ILCS 175/1, *et seq.*, and the Illinois Insurance Claims Fraud Protection Act, 740
ILCS 92/1, *et seq.*, because Relator failed to comply with the statutory requirements to notify the
State of Illinois of his action.  Defendants make this assumption based upon the docket sheet for
this matter.  *See* DEF Memo, p. 11.  The docket sheet, however, does not reflect all actions taken
by Relator.

On March 29, 2010, Relator's counsel sent to the Clerk of the United States District
Court for the Central District of Illinois, via e-mail, Relator's *qui tam* complaint for filing under
seal pursuant to 31 U.S.C. §3730(b)(2), 740 ILCS §175/4(b)(2) and 740 ILCS 92/15(b).[2]  *See*
Affidavit of Ronald E. Osman attached hereto as Exhibit A.  The Complaint was filed under seal
on March 30, 2010.  The filing of the sealed complaint is not reflected on the Court's docket
sheet.

Relator fully complied with 740 ILCS 175/4(b)(2) and 750 ILCS/92/15(b) in regard to his
Complaint.  On March 31, 2010, Relator's Counsel served his Complaint upon the Bureau Chief
of General Law of the Office of the Illinois Attorney General via Certified Mail, Return Receipt
Requested, and it was received by the Bureau Chief of General Law of the Office of the Illinois
Attorney General on April 2, 2010.  See Exhibit A.  On April 23, 2010, Relator's Disclosure of
Substantially All Material Evidence and Information was served upon the Bureau Chief of
General Law of the Office of the Illinois Attorney General via United Parcel Service, and it was

---

[2] Relator's counsel understands he is walking a fine line in regard to the seal provisions over this
matter as all documents filed prior to the Amended Complaint have not been unsealed by the
Court.  Relator's counsel is setting forth only the basic details necessary in regard to these items
to show that Relator has fully complied with all applicable statutes.

received by the Bureau Chief of General Law of the Office of the Illinois Attorney General on April 26, 2010. See Exhibit A.

On February 3, 2012, Relator's Counsel sent a Motion for Leave to Amend Complaint as a Matter of Right Pursuant to Federal Rule of Civil Procedure 15(a) and an Amended Complaint to the clerk for filing in this matter. Again, the documents were filed conventionally rather than electronically pursuant to Local Rule 5.10 of the Local Rules for the Central District of Illinois, January 20, 2010. See Exhibit A. Relator's Amended Complaint was filed electronically on February 8, 2012, by the Clerk's Office and is reflected as Doc. #13 on the docket sheet.

Relator fully complied with 740 ILCS 175/4(b)(2) and 750 ILCS/92/15(b) in regard to his Amended Complaint. On February 10, 2012, Relator's Counsel served his Amended Complaint upon the Bureau Chief of General Law of the Office of the Illinois Attorney General via Certified Mail, Return Receipt Requested, and it was received by the Bureau Chief of General Law of the Office of the Illinois Attorney General on February 14, 2012. See Exhibit A. On March 6, 2012, Relator's Supplemental Disclosure Statement was served upon the Bureau Chief of General Law of the Office of the Illinois Attorney General via Certified Mail, Return Receipt Requested, and it was received by the Bureau Chief of General Law of the Office of the Illinois Attorney General on March 8, 2012. See Exhibit A.

On May 29, 2013, the United States of America filed its Notice of Election to Decline Intervention. This filing is not reflected on the docket sheet; however, copies were provided by Relator to all Defendants after service of the Amended Complaint upon them (See Doc. #40 and #41). In the Notice of Election to Decline Intervention, the United States requested the Court unseal the Complaint and Amended Complaint. In response, the Court entered a Sealed Order

on May 31, 2013, unsealing the Amended Complaint and various other documents and ordering Relator to proceed with service on the Defendants.  (Doc. # 24)

Defendants are correct that the State of Illinois has not entered an appearance or filed a declination decision in this matter.  The State of Illinois' inaction in this matter to date, however, is at no fault of the Relator as he has fully complied with all requirements placed upon him by the applicable statutes.  Under the provisions of the Illinois False Claims Act, the State of Illinois continues to hold the right to intervene at any time while this litigation is being pursued by the Relator, has the right to pursue or request dismissal of Relator's action so it can pursue other remedies and holds the ultimate decision over any settlement or dismissal proposed by Relator.  740 ILCS 740/4(c)(3); *Scachitti, et al. v. UBS Financial Services, et al.*, 215 Ill.2d 484, 511-513 (2005).  Accordingly, the State of Illinois may at any time during the pendency of this litigation take any one or more of the actions Defendants claim the State of Illinois could have taken had it been informed of the seal.  The Illinois False Claims Act and Illinois Insurance Claim Fraud Protection Act allegations (Counts XI-XX and XXI-B) of Relator's Amended Complaint should not be dismissed on the basis of Relator allegedly failing to comply with statutory requirements of notice to the State of Illinois.

### III.     Relator's Allegations are sufficient under Rule 9(b).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  *See* F.R.C.P. 9(b).  "Particularity" means the plaintiff must plead "the who, what, when, where, and how: the first paragraph of any newspaper story."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. Walgreen Company*, 631 F.3d 436, 441-432 (7th Cir. 2011).   It does not require full-scale fact pleading in relation to the fraud or require a

plaintiff present his entire case at the pleadings level.  See *United States ex rel. Durcholz v. FKW Inc.*, 997 F. Supp. 1143, 1152 (S.D. Ind. 1998); *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993); *U.S. ex rel. Yannacopolous v. General Dynamics, et al.*, 315 F.Supp.3d 939, 945 (N.D. Ill. 2004).

In the instant matter, Defendants assert that in order to meet the "who, what, when, where and how" standard, Plaintiff must identify a specific fraudulent claim or one payment made by the Government and must include specific details on "when any payments occurred" and "how much money was involved".  DEF Memo, p. 18-19.  With such "requirements", Defendants are attempting to narrow the requirements of Rule 9(b) to more stringent guidelines than outlined in the rule or intended by its enactors or the Seventh Circuit Court of Appeals.[3]   In the matter of *Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. Walgreen Company*, 631 F.3d 436, 442-433 (7th Cir. 2011), the Seventh Circuit specifically noted that "courts and litigants often erroneously take an overly rigid view of the formulation" in regard to Rule 9(b). Defendants' assertions are a prime example of an "overly rigid view."

---

[3]  It is important to note that the case law cited by Defendants in support of their "individualized transaction" assertions is not indicative of the current standard in the Seventh Circuit.  The *U.S. and State of Illinois ex rel. Crews v. NCS Healthcare of Illinois, Inc., et al.*, 460 F.3d 853 (7th Cir. 2006) was decided by summary judgment, which is decided on different standards than a Rule 9(b) Motion to Dismiss.  The standards are not interchangeable – even in regard to the *Crews* decision for purposes of *qui tam* litigation.  *U.S. ex rel. Coots v. Reid Hospital & Health Care Services, Inc., et al.*, 2012 U.S. Dist. LEXIS 46013, p. 6 (S.D. Ind. 2012) *U.S. ex rel. Yarberry v. Sears Holding Corp., et al.*, 2013 U.S. Dist. LEXIS 44266, p. 12, fn 4 (S.D. Ill. 2013). Complaints that may fail under the Summary Judgment standard can prevail under 9(b) standards.  *See United States ex rel. Durcholz*, 997 F.Supp.1143 (S.D.Ind. 1998)(complaint withstands 9(b)) and *United States ex rel. Durcholz*, 189 F.3d 542 (7th Cir. 1999)(Complaint does not withstand summary judgment).  In fact, the complaint in *Crews* itself survived two 9(b) motions before the entry of summary judgment on behalf of the defendant.  *See United States ex rel. Crews v. Family Care Nursing, et al,* Southern District of Illinois, Cause No. 99-CV-04020-GPM-PMF, Documents #80, #82 and 119.

In regard to *U.S. ex rel. Fowler v. Caremark Rx., L.L.C.*, 496 F.3d 730 (7th Cir. 2007), the *Fowler* decision, does not specifically require that actual submission of a specific false claim be pled.  *Coots*, p. 6-7, fn 4; *Yarberry*, p. 12, fn 4.

The Seventh Circuit does not have an across the board standard that all *qui tam* complaints must set forth detailed information regarding a specific false claim submitted by a defendant.   Instead, the detail required for the "who, what, where, when and how" varies from case to case specifically in *qui tam* litigation.  *Pirelli*, 442.   "[A] relator does not need to have actually witnessed the 'specific request for payment' or to have had access to the paperwork submitted to the government".  *U.S. and State of Illinois ex rel. Geschrey v. Generations Healthcare, LLC, et al.*, 922 F.Supp.2d 695, 704 (N.D. Ill. 2012).

For example, in the matter of *U.S. ex rel. Lusby v. Rolls-Royce Corporation*, 570 F.3d 849 (7th Cir. 2009), a relator's complaint was dismissed by the United States District Court of the Southern District of Indiana for failure to include details regarding even one specific request for payment.  The relator, an engineer for a company producing engines for the military, had no access to that information for inclusion in his complaint.  The Seventh Circuit reversed the 9(b) dismissal, finding that it was not essential for the relator to produce the invoices at the beginning of the litigation because of inferences that could be made from the complaint allegations – the defendant was required by its government contract to sign a certification with each request for payment, the defendant must have submitted at least one such certificate or it would not have been paid and if the defendant submitted a certificate knowing it was false, it committed fraud. *Lusby*, 854.  The Seventh Circuit stated:

> Since a relator is unlikely to have those [billing] documents unless he works in the defendant's accounting department, the district court's ruling takes a big bite out of *qui tam* litigation.

*Id.*

Similarly, a *qui tam* complaint lacking information on false claims at the individual claim level was found to meet the particularity requirements of Rule 9(b) in the matter of *U.S. and*

11

*State of Illinois ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F.Supp.2d 695 (N.D. Ill. 2012), when the relator knew false claims were being submitted but did not have access to billing information for individual claims and in fact did not even know which specific government program was being billed for healthcare services for each patient at the time of the alleged fraud.  The Northern District of Illinois found the relator to have pled the submission of claims with enough particularity to inform the defendants of the claims being challenged, stating:

> In this circuit, a relator does not need to have actually witness the "specific request for payment" or to have had access to paperwork submitted to the government.
> . . .
> Despite Relators' lack of specific knowledge about billings submitted to the government, the fact that most of [Defendant's] patients were receiving government benefits and [Defendant] billed Medicare and Medicaid at a *per diem* rate for each covered patient creates a strong inference that bills for the care of patients as to whom fraud has been alleged were submitted to the government. The Complaint alleges that "Generations has monthly Medicare/Medicaid patients because its main service area includes the underserved people on the south side of Chicago.  It does have some patients with private insurance, but very few." Relators do not specify in each example whether [Defendant] billed Medicaid, Medicare, or both.  Even so, the facts as pleaded support the inference that claims based on fraudulent misrepresentations were submitted to one or both of the government programs. . . .
>
> In addition, the court considers Relators' positions at Generations when assessing what information is required of them.  The Seventh Circuit has recently noted the importance of balancing detail with flexibility in applying the Rule 9(b) standard, criticizing courts and litigants that cling too tightly to the incantation of "who, what, when, where, and how," rather than understanding that the information required of a plaintiff will differ in each case.  As Relators' duties primarily involved providing spiritual care and supervising other spiritual care or field care employees, they had no access to billing documents and no way to know which government program was being billed for each patient at the time of the alleged incident of fraud.

*Id.*, 705-706.

Defendants' claims that Relator's Second Amended Complaint must fail under Rule 9(b) because he has not listed a date a claim was submitted, a claim number or a date a payment was

made is not the correct legal standard.  Instead, Relator only needs to plead the "who, what, when, where, and how" so that Defendants are each aware of the particular fraud being alleged, the claims alleged to be false and their individual actions in the fraud.  The Second Amended Complaint is not insufficient because a particular claim number is not alleged along with the date that claim was submitted and paid. This kind of detailed information is termed "evidence" and will be easily identified early in the discovery process. At trial such evidence will be so voluminous that it will be presented by summary exhibits pursuant to FRE 1006.

A.      **The Billing Counts set forth the particularity required under Rule 9(b)**

The Billing Counts of Relator's Amended Complaint set forth a fraudulent scheme engaged in by Defendants AAS, MMP and ABC for the submission of false claims for "medically directed" anesthesia services which detail all information needed for the first paragraph of a news article – albeit a long paragraph:

> Defendant AAS (WHO - ¶85-100, 374-384, 399-409, 704-713) submitted false claims via the CMS-1500 to Medicare for "medically directed" anesthesia services and to IL Medicaid and private insurers via the CMS-1500 for continuous epidural services to obstetrics patients (WHAT - ¶87-93, 368-381, 395-404, 704-707) from 1997 to the present (WHEN - ¶87, 374, 399, 704) for anesthesia services provided at Memorial Medical Center (WHERE - ¶70) by classifying services as "medically directed" rather than "medically supervised" when anesthesiologists were allegedly away from the surgery department and present on the obstetrics floor providing continuous epidural anesthesia, by classifying epidural anesthesia services as "continuous" even though the anesthesiologist did not stay with the patient or remain available to provide services if needed and by falsifying medical records (either directly or via omission) to support their false claims, all in an effort to induce higher Medicare/IL Medicaid payment (HOW - ¶87-98, 374-385, 699-713). Defendants MMP and ABC (WHO - ¶110-127, 137, 150, 423-435, 449-462) caused Defendant AAS to submit these false claims (WHAT - ¶110-121, 137-148, 423-431, 449-457 ) from 1997 to the present (Defendant MMP from 1997 to September 30, 2008 and Defendant ABC from 10/1/08 to the present)  (WHEN - ¶110, 137, 423, 449) for anesthesia services provided at Memorial Medical Center (WHERE - ¶70) by gathering and creating Defendant AAS' billing records at Memorial Medical Center and transmitting it to their respective offices (WHERE - ¶110, 137, 423, 449),  submitting the false claims on Defendant AAS' behalf, falsifying records to support the false billings

to Medicare and IL Medicaid, making made false statements to obtain government payment and falsifying medical record and billing documentation to support the false claims, all in an effort to increase Medicare/IL Medicaid reimbursement for Defendant AAS (HOW- ¶110-125, 137-148, 423-431, 449-461).

Additionally, Relator sets forth examples of two specific patients for which Defendants AAS submitted claims to Medicare for "medically directed" services in the surgery department while he allegedly was also upstairs in the Obstetrics Department providing and/or monitoring continuous epidural services to an IL Medicaid patient and for which Defendant AAS received payment from Medicare for the false claims. Complaint ¶91-94, ¶118-121. Relator sets forth seven examples of patients for which Defendant AAS submitted claims to IL Medicaid for continuous epidural services when those services were not in fact provided. Complaint, ¶376-377, ¶400-401, ¶426-427, ¶452-453.

A *qui tam* complaint alleging false claims from a similar situation – physicians not being physically present as required by Medicare regulations for surgical procedures performed by medical residents – was found to meet the particularly requirements of Rule 9(b) by the Northern District of Illinois when alleging similar facts with no specific dates, claim numbers, etc. regarding the alleged false claims. In *Goldberg v. Rush University Medical Center, et al.*, 929 F.Supp.2d 807 (N.D. Ill. 2013), two relators, an orthopedic surgeon and a non-medical/non-billing employee of a medical center, brought a *qui tam* action alleging false claims to Medicare and Medicaid by numerous defendants resulting from the practice of overlapping and simultaneous surgeries at a teaching hospital.[4]  *Goldberg*, 812. In addition to various violations

---

[4] Medicare Part B provides coverage for surgery performed by a medical resident when a teaching physician is physically present during the key and critical portions of a surgery and is readily available at all other times during the surgery to offer assistance and not involved in another procedure from which he could not return if needed. *Goldberg,* 812. Medicare Part B allows for the teaching physician to "overlap" surgeries performed by residents under these rules

of Medicare rules for overlapping surgeries (such as a surgery where the billing teaching doctor had never entered the operating room, five overlapping surgeries to be performed by one surgeon in three different buildings in a three hour period, teaching surgeons not being available when medical residents were operating, etc.), the relators alleged that the doctors falsified medical records by noting the physician was present as required and always immediately available and that nurses at the facilities refused to note in their medical records the specific times the doctors entered and left the operating room.  *Id,*. 813.  The defendants challenged the complaint under Rule 9(b) on the basis that relators had made only conclusory statements and failed to provide essential details such as the procedures that were performed and the specific fraudulent claims that were submitted.  *Id.,* 817.  The Northern District of Illinois, after examining the "who, what, when, where and how" outlined in the complaint and finding the complaint to be sufficient under Rule 9(b), stated:

> Although Relators do not fully detail all the circumstances of the alleged misrepresentations in their Complaint, the Court finds that they sufficiently allege fraud for the purposes of Rule 9(b), thereby giving [defendants] sufficient notice to prepare a defense against the claim.  Relators' allegations do not vaguely refer to unidentifiable transactions and misrepresentations.  Rather, Relators allege that [defendants] made a consistent practice of filing claims for Medicare reimbursement that did not satisfy Medicare's standards.  The Complaint pleads specific details, including surgery schedules, that detail noncompliance with Medicare Rules and Regulations.  Defendants argue that some of Relators' allegations are untrue and unsupported by specific details.  At this stage in the litigation, however, all of Relators' allegations are presumed true and all reasonable inferences must be drawn in their favor.  Although Relators do no identify the particular individual who submitted the Medicare claims, or the precise time, place, and method of each submission, the Court accepts Relators' assertions that these details are in Defendants' sole possession and are inaccessible to them.  The Court concludes that the Complaint complies with Rule 9(b) by pleading a general fraudulent scheme, identifying the individual

---

so long as the teaching physician is present during the key and critical portions of the surgery, documents in the medical record when he was present in the operating room and arranges for another surgeon to be available at any time he will not be immediately available for assistance. *Id.*

defendants and their roles within the scheme, pleading specific representative examples that answer all five of the "newspaper questions," and providing reasonable grounds for suspicion of the facts that are inaccessible to Relators.

*Goldberg*, 822.

In the instant matter, as with the *Goldberg* complaint, Relator's Second Amended Complaint outlines a consistent practice of false claims being made or caused to be made by Defendants AAS, MMP and ABC for claims that did not satisfy Medicare/IL Medicare rules, regulations and standards. Relator did not provide the precise time and date of the submission or payment of these claims; however, he, as a physician within Defendant AAS and not a billing employee or administrative employee, did not have access to that information while employed by Defendant AAS or after his employment with Defendant AAS was terminated. The Amended Complaint pleads a specific fraud scheme involving anesthesia billing, identifying the defendants and their role in the scheme, pleads representative examples, provides the time period involved and provides reasonable grounds for the facts that are inaccessible to Relators. The Billing Counts should not be dismissed under Rule 9(b).

**B.      The CNRA Counts and Cost Report Counts Comply with Rule 9(b)**

As the with Billing Counts, Defendants assert the CRNA Counts and Cost Report Counts must fail because specific false claims and specific cost reports are not alleged within the counts. The CRNA Counts and Cost Report Counts set forth allegations of false claims resulting from violation of the Anti-Kickback Statute (42 U.S.C. §1395nn(a)), the Stark Law (42 U.S.C. §1302a-7b(b)(2)) and the Illinois Anti-Kickback Law (305 ILCS 5/8A-3). The Southern District of Illinois reviewed the "who, what, when, where and how" requirements of 9(b) for such a *qui tam* complaint filed for violations of the Anti-Kickback statute in the matter of *U.S. ex rel. Yarberry v. Sears Holding Corp., et al.*, 2013 U.S. Dist. LEXIS 44266 (S.D. Ill. 2013). In

finding that a complaint alleging instances of the kickbacks but not linking the activity to a specific claim satisfied the requirements of Rule 9(b) when it alleged compliance with state statutes was a condition of payment under both federal and state healthcare programs, the Southern District of Illinois stated:

> A review of the portions of the Second Amended Complaint cited by Relator confirms that paragraphs 38, 52 and 59 are specific examples of apparent AKA violations – detailing the "who, what, when, where and how" of the "kickback." None of the cited incidents of the kickback activity is linked to a particular claim that was submitted to the government.  However, the Second Amended Complaint does contain a broad allegation that "[c]ompliance with federal and state statutes prohibiting kickbacks is a material condition to payment under the Federal [sic] and state government healthcare programs."  Thus, the FCA claim is sufficiently clear and satisfies the heightened pleading standard in Rule 9(b). . .

*Yarberry*, 9-10.

The instant Amended Complaint asserts that at all times relevant to the CRNA Counts and Cost Report Counts, the Anti-Kickback Statute (42 U.S.C. §1395nn(a)), the Stark Law (42 U.S.C. §1302a-7b(b)(2)) and the Illinois Anti-Kickback Law (305 ILCS 5/8A-3) prohibited claims to Medicare/IL Medicaid for services rendered by a provider as a result of a referral by a physician with an interest in the provider and payment of remuneration to induce referrals to be paid for by a Federal health care program.  (¶167-168, 196-197, 481-483, 514-516, etc).  It also specifically alleges that Defendants agreed to comply with those regulations (¶232, 263, 329, 513, 548, etc.).  Each one of the CRNA Counts and Cost Report Counts sets forth a scheme wherein Defendant AAS and Defendant MMC entered into an agreement wherein Defendant MMC provided remuneration to Defendant AAS to increase surgical referrals of Medicare and IL Medicaid patients to Defendant MMC in direct violation of the Anti-Kickback Statute and Stark Law. (¶152-166, 181-195, 212-228, 465-479 etc.).  Counts VI, IX, XVII and XX asset that Defendant MHS knew about these violations and acquiesced to the same.  (¶224, 227, 322, etc.)

Each of CRNA Counts assert that as a result of the violations of the Anti-Kickback Statute and Stark Law all claims submitted by Defendant AAS to Medicare and IL Medicare for CRNA services performed by CRNAs employed by Defendant MMC were false (¶170-171, 200-202, 233 -235, 485-486, etc.).  Each of the Cost Report Counts asserts that cost reports certified by Defendant MMC to be "true and accurate" were false as a result of the violations of the Anti-Kickback Statute and Stark Law (¶265-267, 329-331, 589-591, etc).

These allegations meet the "who, what, when, where and how" requirements for purposes of meeting Rule 9(b) in relation to asserting false claims as a result of violations of the Anti-Kickback Statue, Stark Law and Illinois Anti-Kickback statute as they set forth the kickback/ illegal remuneration schemes engaged in by Defendants AAS, MMC and MHC and assert that resulting claims were false as these Defendants were required to comply with the statutes in order to participate in the healthcare programs.  The CRNA Counts and Cost Report Counts should not be dismissed under Rule 9(b).

## IV.     STATUTE OF LIMITATIONS ISSUES

A statute of limitations challenge is an affirmative defense.  *Independent Trust Corporation v. Stewart Information Services Corporation, et al.*, 665 F.3d 930, 935 (7th Cir. 2012); *James Clark v. The City of Braidwood*, 318 F.3d 764,767 (7th Cir. 2003).  "[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Independent Trust*, 935.  When a complaint sets forth the necessary facts to prove the affirmative defense of a statute of limitations violation, however, dismissal is appropriate under Rule 12(b)(6).  *Id.*  When the complaint does not allege facts showing the statute of limitations has been violated, the complaint should not be dismissed on that basis.  *Clark*, 767-768.

**A.** **Relator's allegations of false claims under the False Claims Act and Illinois False Claims Act are subject to a 10 year statute of limitations.**

Defendants are partially correct in asserting that some of the claims alleged in the Amended Complaint are time barred.  Both the False Claim Act and Illinois False Claims Act allegations (Counts I-XI and Counts XI-XX) should be limited to claims occurring on or after March 30, 2000.  Relator agrees that his allegations of false claims submitted prior to March 30, 2000 should be dismissed as time barred.

A 10 year statute of limitations in this matter is appropriate. The False Claims Act sets forth two limitations periods for bringing actions under its provisions:  (1) within 6 years after the false claim is made; or (2) within 3 years after the false claim becomes known or should have been known by the United States official with the responsibility to act on the false claim. 31 U.S.C. §3731(b).[5]  In no event, can an action be brought more than 10 years after the violation is committed.  *Id.*

As explained by the Northern District of Illinois in the matter of *U.S. ex rel. Bidani v. Lewis, et al.*, 1999 U.S. Dist. LEXIS 3530 (N.D. Ill. 1999):

> § 3731(b)(2) should be read as applying the three-year and 10-year rule to the party that is actually bringing the action in the government's name.  If the responsible government official is not bringing the action directly in the government's name, then it is the relator who is bringing the action in the government's name.  When the government declines joining in the action, then the three-year rule is measured by the knowledge of the relator.

*Bidani,* 23.

---

[5] Identical statute of limitation provisions for actions filed under the Illinois False Claims Act are found at 40 ILCS 175/5(b).  The limitations standards applied to Federal False Claims Act action also apply to  Illinois False Claims Act . See *United States ex rel. Humphrey v. Franklin-Williamson Human Services, Inc.*, 189 F. Supp. 2d 862, 867 (S.D. Ill. 2002(since the Illinois False Claims Act is virtually identical to the False Claims Act, courts look to the False Claims Act for guidance on Illinois False Claim Act issues).

Therefore,

> [u]nder the Act, [the relator is] required to file her action "no more than (1) six years after the date on which the FCA violation is committed or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by [[the relator]], whichever occurs last." <u>United States ex rel. Hyatt v. Northrop Corp.</u>, 91 F.3d 1211, 1218 (9th Cir. 1996); <u>United States v. Tech Refrigeration</u>, 143 F. Supp. 2d 1006, 1008 (N.D. Ill. 2001); 31 U.S.C. § 3731(b).  In addition, "[a] suit under the Act must, in any event, be brought no more than ten years after the date on which the violation occurred." <u>Hyatt</u>, 91 F.3d at 1218; 31 U.S.C. § 3731(b).

*United States ex rel. King v. F.E. Moran, Inc.,* 2002 U.S. Dist. LEXIS 16277, 40 (N.D. Ill. 2002).

As these discussions indicate, the 10-year period of repose applies irrespective of the intervention status of the case.  Furthermore, the 10-year period applies regardless of whether the cause of action is filed within six years of the violation or within three years after the discovery of the material facts.

A 10 year statute of limitations is appropriate in this matter.  In April 2009, Relator attended a meeting of Defendant AAS shareholders during which a representative of Defendant ABC reported Defendant ABC would be resubmitting all of Defendant AAS' obstetric epidural anesthesia claims[6] to all insurance carriers to indicate the services had been provided continuously from the time of induction to the delivery of the child as had been the practice of Defendant MMP. (Amended Complaint, ¶345).  After that meeting, Relator accessed the website for the Centers for Medicare and Medicaid Services, located regulations regarding "medical direction" of anesthesia services and provided that information to two of Defendant AAS administrative physicians – Dr. Peter Martin and Dr. Reg Buckley.  (Amended Complaint, ¶347-348).  These two occurrences were Relator's first inklings that the claims Defendant AAS was

---

[6] In this instance, "all" claims would be claims from October 2008 when Defendant ABC took over billing responsibilities for Defendant AAS.

submitting to Medicare and IL Medicaid were not in compliance with applicable laws and regulations.

Relator filed his *qui tam* complaint on March 30, 2010, well within the three year limitations period outlined in §31 U.S.C. 3731(b).  Accordingly, he is allowed by the tolling provision of 31 U.S.C. §3731(b) to seek recourse on false claims filed or caused to be filed by Defendants during the 10 years prior to his filing. See *U.S. and State of Illinois ex rel. Estrada v. Quad City Prosthetic, Inc., et al*, 2011 U.S. Dist. LEXIS 84190 (C.D. Ill. 2011)(statute of limitations period found to be 10 years from the date of relator's complaint). Relator's allegations of Defendants' violations of the False Claims Act and Illinois False Claims Act during the period of March 30, 2000, to the present should not be dismissed pursuant to Rule 12(b)(6).

**B.**    **Relator's allegations of false claims under the Insurance Claim Fraud Prevention Act are subject to an 8 year statute of limitations.**

Defendants are correct in that 740 ILCS 92/45 require Relator have filed his action within three years of the discovery of the grounds for commencing the action.  DEF Memo, p. 27. Defendants, however, fail to indicate in their memo that this three year period is only one part of the limitations outlined by 740 ILCS 92/45.  The statute in its entirety reads:

(a)    Except as provide in subsection (b), an action pursuant to this Act may not be filed more than 3 years after the discovery of the facts constituting the grounds for commencing the action.

(b)    Notwithstanding subsection (a), an action may be filed pursuant to this Act within not more than 8 years after the commission of an act constituting a violation of this Act, Section 17-8.5 or Section 17-10.5 of the Criminal Code of 1961 or the Criminal Code of 2012, or a violation of Article 46 of the Criminal Code of 1961.

As noted above, Relator became aware of Defendants' fraudulent activity in April 2009.  His complaint was filed on March 30, 2010, well within the 3 year period required by 740 ILCS

92/45(a).  Under 740 ILCS 92/45(b), he is allowed to pursue false claims filed within 8 years prior to the filing of his complaint, making the appropriate statute of limitations date March 30, 2002.  Relator acquiesces to a statute of limitations date of March 30, 2002, and agrees that all claims alleged prior to March 30, 2002, for the purposes of the Insurance Claim Fraud Prevention Act are time barred.   Relator's claims of violation of the Insurance Claim Fraud Prevention Act during the period of March 30, 2002, to the present should not be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

Defendants have challenged Relator's Amended Complaint on four distinct bases, each of which does not justify dismissal at the pleadings stage.  In summary:

- Relator has not "pled himself out of court" under Rule 12(b)(6).  Relator has not pled facts which negate his cause of action in Counts I-III.  Relator is not required at the pleading stage to prove his case, just set forth facts which give fair notice of his claim and plausibly suggest he has a right to relief.

- Relator provided the State of Illinois with all statutory notice required of him.  The State of Illinois' failure to act is at no fault of the Relator.  Defendants are not prejudiced by the State of Illinois' inaction to date as under the Illinois False Claims Act the State of Illinois holds the ability to intervene at any time in this action or pursue other remedies as it sees fit in this action's stead.

- Relator has provided the "who, what, when, where and how" in regard to the Billing Counts, CRNA Counts and Cost Report Counts to set forth with particularity the fraudulent schemes engaged in by Defendants.  Seventh Circuit precedent does not require Relator provide specific dates of claim submission, specific dates of Government

payment, specific claim numbers or cost report filing dates when Relator has never been
in the position to have access to that information; and

- Relator discovered Defendants' fraudulent activity in April 2009 and filed his *qui tam*
  complaint in May 2010, well within the 3 year statute of limitations prescribed by the
  False Claims Act, Illinois False Claims and the Illinois Insurance Claim Fraud Protection
  Act.  The False Claims Act and the Illinois False Claims Act allow Relator to allege the
  submission of false claims 10 years prior to the date of filing his action.  The Illinois
  Insurance Claims Fraud Protection Act allows him to allege the submission of false
  claims 8 years prior to his filing.

Accordingly, Plaintiff's Second Amended Complaint should not be dismissed.

WHEREFORE, Relator, Donald Helfer, respectfully requests, the Court deny
Defendants' Consolidated Motion to Dismiss in this matter.

RONALD E. OSMAN & ASSOCIATES, LTD.

By:  /s/ Ronald E. Osman
Counsel for Relator

Ronald E. Osman #3123542
Ronald E. Osman & Associates, Ltd.
1602 W. Kimmel/P.O. Box 939
Marion, IL  62959  (618) 997-5151
Facsimile (618) 997-4983
E-mail:  rosman@marion.quitamlaw.com

G. Patrick Murphy, #1994484
Murphy & Murphy, LLC
3415 Office Park Drive, Ste D.
Marion, IL  62959
Phone:  (618) 248-3236
Fax:  (888) 371-6445
E-mail:  gpatrick@murphymurphyllc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Eric Long | David J. Stetler |
| Gary E. Green | Henry M. Baskerville |
| J. Timothy Eaton | Joshua T. Buchman |
| Paul R. Brown | Peter Timothy Senechalle |
| Richard H. Narup | Russell A. Kolsrud |
| Michael P. Sheehan | Roger J. Kiley |
| Jack J. Hagerty | |

and I hereby certify that on March 17, 2014, I mailed by United States Postal Service, the document to the following:

None

RONALD E. OSMAN & ASSOCIATES, LTD.

By:   /s/ Ronald E. Osman
Counsel for Relator